IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-CV-736-WKW |
| | ) | [WO] |
| WESTROCK SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Willie Wright brings this action against his former employer, WestRock Services, Inc., which manufactures paperboard cartons for the beverage industry at its facility in Lanett, Alabama. Mr. Wright, who is African American, alleges that his termination after eighteen years of employment was racially discriminatory and retaliatory in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981. Before the court is Defendant's motion for summary judgment, which is accompanied by evidence and a memorandum of law. (Docs. # 22–24.) Mr. Wright filed a response in opposition (Doc. # 35) to which Defendant filed a reply (Doc. # 36). Construing the evidence in the light most favorable to Mr. Wright, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), the court finds "that there is no genuine

dispute as to any material fact" and that Defendant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## I. DISCUSSION

Because Mr. Wright relies on circumstantial evidence, the sufficiency of his Title VII and § 1981 claims is measured under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1217 (11th Cir. 2019) (en banc) (applying the *McDonnell Douglas*/*Burdine* framework to the plaintiff's claims of intentional discrimination under Title VII and § 1981); *see also Burstein v. Emtel, Inc.*, 137 F. App'x 205, 208 (11th Cir. 2005) ("In cases involving circumstantial evidence of discrimination or retaliation under Title VII and § 1981, courts use the analytical framework set forth in *McDonnell Douglas*."). First, Mr. Wright must establish a prima facie case of racial discrimination and retaliation. *See McDonnell Douglas*, 411 U.S. at 802. If Mr. Wright demonstrates prima facie cases of race discrimination and retaliation, the burden shifts to Defendant to show a legitimate, non-discriminatory and non-retaliatory reason for the adverse employment action. *See id.* If Defendant succeeds, Mr. Wright must demonstrate that Defendant's proffered reason is pretextual. *See id.* at 804. Mr. Wright must prevail at each stage to withstand Defendant's motion for summary judgment.

## A.    Title VII/§ 1981 Race Discrimination Claims

Mr. Wright's Title VII/§ 1981 claims alleging a racially discriminatory termination fail for two reasons.  First, Mr. Wright cannot prove a prima facie case because he has not put forth a comparator who is "similarly situated in all material respects."  *Lewis*, 918 F.3d at 1218.  Second, Mr. Wright has not raised a genuine dispute of material fact that Defendant's legitimate, non-discriminatory reason for terminating him is a pretext for race discrimination.

### 1.    *Mr. Wright cannot demonstrate a prima facie case of racial discrimination because he has not identified a similarly situated comparator.*

Mr. Wright points to two white employees, Danny McClenny and Adam Montgomery, who, like him, were cutter operators.  He contends that they are similarly situated comparators, but they are not.  In 2016, Mr. McClenny and Mr. Montgomery each received a written warning for performance issues under Defendant's progressive discipline policy. (*See* Gibson's Decl. ¶¶ 21–22 (Doc. # 24-3); Taylor's Decl. ¶¶ 28–29 (Doc. # 24-2).)  Mr. Wright complains that they were not terminated for their infractions, while he was.  His argument fails to acknowledge that the written warning was a first offense for Mr. McClenny and for Mr. Montgomery.  The incident that resulted in Mr. Wright's termination in March 2017 occurred after Mr. Wright had received five written warnings, two suspensions, and a one-year probationary period over a four-and-a-half month period.  Although under

Defendant's progressive discipline policy Mr. Wright's fourth written warning was grounds for termination, Defendant instead imposed a six-day suspension and one year of probation. (*See* Pl.'s Disciplinary Records (Doc. # 24-1, at 144–53).) Mr. White's alleged white comparators are not similarly situated to Mr. Wright because they do not come close to "shar[ing] the plaintiff's . . . disciplinary history," either in quantity or quality. *Lewis*, 918 F.3d at 1218.

Mr. Wright also points to a white coworker, Jeff Shores, arguing that Mr. Shores is a similarly situated comparator, but he is not. Mr. Wright contends that Mr. Shores "cut . . . the bad product" on the production line that resulted in Mr. Wright's termination in March 2017, but that Mr. Shores received only a disciplinary "write-up" and retained his job. (Pl.'s Br. in Opp'n to Def.'s Summ. J. Mot., at 10 (Doc. # 35) (citing Pl.'s Dep., at 129, 175 (Doc. # 24-1)).) Even if Mr. Shores solely is at fault for the broken knife that resulted in cutting errors in 11,000 cartons rendering them "useless," Defendant held Mr. Wright accountable not only for the cutting errors, but also for failing to follow quality assurance procedures in place to detect the errors. (Pl.'s Employee Counseling Form (Doc. # 24-1, at 151).) Hence, Mr. Wright has not demonstrated that the conduct for which he was terminated is similar to the conduct for which Mr. Shores was disciplined. The summary judgment record also is bereft of any evidence pertaining to Mr. Shores's disciplinary history. Without evidence that, on the date of this incident, Mr. Shores

and Mr. Wright had amassed similar infractions, it is impossible to conclude that Mr. Shores is a proper comparator. The lack of evidence of Mr. Shores's similarity prevents an inference of race discrimination from the difference in treatment. In sum, Mr. Wright has not pointed to any individual outside his protected class who had a disciplinary history analogous to his and who was not terminated.

### 2. There is no evidence that Mr. Wright's termination was a pretext for race discrimination.

Even if Mr. Wright had demonstrated a prima facie case of race discrimination, Defendant has proffered a legitimate, non-discriminatory reason for terminating Mr. Wright, namely, Mr. Wright's documented, ongoing performance issues. (Pl.'s Employee Counseling Form, dated 03/01/2017 (Doc. # 24-1, at 151) (documenting that Mr. Wright was fired "due to continued failure to meet performance requirements").) Mr. Wright must meet this reason head on and rebut it. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). The bottom line is that he cannot. Within a ten-week period Mr. Wright received four written warnings for violations of company rules. These written warnings resulted in two separate suspensions (a one-day suspension and later a six-day suspension) and in the imposition of a one-year probationary period during which he was subject to termination for any violation of company rules. Mr. Wright disagrees only with the conduct underlying one of those four written warnings (the July 5, 2016 written

warning), but he agrees that, on this occasion, the discipline imposed "had nothing to do with [his] race." (Pl.'s Dep., at 154.) Then, on October 23, 2016, while on probation, Mr. Wright received another written warning for violating company rules. Mr. Wright agrees that he could have been terminated for this fifth infraction because he was on probation but that instead he was given another chance. (Pl.'s Dep., at 123–24, 142–43.) There is no dispute that an employee's accumulation of four written warnings within a twenty-four-month period results in termination under Defendant's progressive discipline policy (Taylor's Decl. ¶ 11); hence, even excluding the July 5, 2016 written warning that Mr. Wright disputes, he could have been fired based solely on the frequency and number of his other violations. Finally, although Mr. Wright does not take responsibility for the production error that resulted in 11,000 defective cartons on his February 25, 2017 shift, Mr. Wright agrees that he was subject to termination for his part in failing to perform his job correctly. (Pl.'s Dep., at 144–45.) Moreover, Defendant has offered evidence that, two months prior to Mr. Wright's termination, a white cutter operator was fired based on a disciplinary record that was very similar to Mr. Wright's. (*See* Gibson's Decl. ¶ 23.)

Mr. Wright has failed to create a genuine factual dispute that Defendant's reason for his termination was pretextual. His attempts to establish pretext are twofold.

For his first attempt, Mr. Wright submits an affidavit from an African-American coworker, Arthur Whitlow, also a former cutter operator who had the same direct supervisor as Mr. Wright. Mr. Wright contends that the affidavit demonstrates that Defendant harbored an intent to discriminate against him (Mr. Wright) on the basis of race. Mr. Whitlow's attestations can be placed into two categories: (1) general attestations of a "strong climate of race discrimination" at Defendant's workplace; and (2) "me too" attestations about Mr. Whitlow's termination, namely, Mr. Whitlow's belief that his termination on September 13, 2019, allegedly for taking too many breaks, was pretext for race discrimination. The former is not helpful because it lacks any supporting details. (Whitlow's Aff. & EEOC Charge (Doc. # 35-2, at 1–7).) Mr. Whitlow's generalization about the atmosphere at Defendant's workplace is not probative of whether race discrimination motivated Mr. Wright's termination. *See Holifield v. Reno*, 115 F.3d 1555, 1563 (11th Cir. 1997) (holding that other employees' "impression that discrimination existed" at the plaintiff's workplace was too generalized to raise an inference of discrimination as to the plaintiff's discrimination claims), *abrogated on other grounds by Lewis*, 918 F.3d 1213; *see generally Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").

The relevancy and admissibility of Mr. Whitlow's "me too" evidence involve a fact-specific balancing. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008); *Denney v. City of Albany*, 247 F.3d 1172, 1189 (11th Cir. 2001). In *Denney*, the plaintiffs argued that the municipal fire chief's articulated reason for not promoting them was pretextual because, two years earlier, a federal court had entered judgment against the city for a racially discriminatory promotion decision made by the same fire chief. *See* 247 F.3d at 1189 (citing *Shealy v. City of Albany*, 211 F.3d 129 (11th Cir. 2000)). Although the Eleventh Circuit recognized that both cases involved the same fire chief who had made the same kind of personnel decision, it held that the distinctions between the cases "weigh[ed] heavily against attaching a great deal of probative value to the *Shealy* litigation." *Id.* (emphasizing that the prior acts of discrimination "concerned a different position," "occurred two years before the decisions at issue," and involved "different applicants and a different selection process"). The *Denney* court concluded that the prior federal judgment was not "sufficient to push the Plaintiffs past summary judgment." *Id.* at 1189–90.

As in *Denney*, "key similarit[ies]" are that the same decisionmaker had a say in the terminations and the same kind of employment decisions were at issue. *Id.* at 1189. Also, it appears that both Mr. Wright and Mr. Whitlow were subject to the same progressive discipline policy and were on probation for prior infractions at the

time of their terminations.  However, there are three notable distinctions.  First, as in *Denney*, the termination decisions lack temporal proximity, as Mr. Whitlow's firing occurred two years after Mr. Wright's.  *See id.*  Second, unlike Mr. Whitlow, Mr. Wright has not disputed that, on more than one occasion, he engaged in misconduct that qualified for termination under Defendant's progressive discipline policy.  Third, in declining to admit "me too" evidence, other courts have distinguished *Denney* because the prior employment decision had the imprimatur of a federal court judgment.  *See Davis v. City of Lake City*, No. 3:10-CV-1170-J-34TEM, 2013 WL 12091324, at *23 (M.D. Fla. Mar. 15, 2013) ("Notably, the evidence in [*Denney*] consisted of an actual court finding in a previous lawsuit that the employer had engaged in racial discrimination."), *aff'd sub nom.* 553 F. App'x 881 (11th Cir. 2014); *Bradford v. City of Birmingham*, No. 2:09-CV-750-IPJ, 2010 WL 11469567, at *8 (N.D. Ala. June 15, 2010) (noting that, in *Denney*, the Eleventh Circuit "considered only the probative value of past findings of discrimination as determined by a federal court, not the value of an affidavit"); *see also Bell v. Crowne Mgmt., LLC*, 844 F. Supp. 2d 1222, 1236 (S.D. Ala. 2012) ("Even when offered to show pretext rather than a prima facie case, 'me, too' evidence is suspect.").  Here, unlike in *Denney*, Plaintiff has submitted a former coworker's affidavit that has not been sifted through the litigation process.  These distinctions combine to weaken the relevance of the proffered affidavit to the instant action.  Any probative value that

can be gleaned from Mr. Whitlow's affidavit is insufficient to overcome the absence of evidence of a similarly situated comparator and is not "sufficient to push [Mr. Wright] past summary judgment." *Denney*, 247 F.3d at 1189–90.

For his second attempt to establish pretext, Mr. Wright contends that his supervisor, Mr. C. J. Gibson, who returned to Defendant's employment in March 2016, was out to get him fired. According to Mr. Wright, Mr. Gibson told him that he (Mr. Gibson) "would write me up to fire me." (Pl.'s Dep. at 155; *see also* Pl.'s Dep. at 152.) But even if Mr. Gibson abhorred Mr. Wright and wanted to get rid of him, Mr. Wright has presented no evidence that this vengeful motive was based on Mr. Wright's race. *See Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) (observing that a school district's "ham-handed investigation and actions singling out [the plaintiff] could lead a reasonable jury to conclude that [the superintendent] had it in for [the plaintiff] from the beginning. But [the plaintiff] offers no evidence . . . that the investigation was pretext of discrimination on the basis of his race."). As the Eleventh Circuit has emphasized on more than one occasion, "Put frankly, employers are free to fire their employees for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Id.* (citation and internal quotation marks omitted); *accord Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010).

Mr. Wright has not demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" to show that Defendant's proffered reason for his termination is pretextual. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation and internal quotation marks omitted). Mr. Wright's subjective opinion that his termination was racially discriminatory lacks evidentiary support and, thus, is insufficient to avoid summary judgment. *See Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001) ("[A]n employee's subjective belief of discrimination alone is not sufficient to warrant judicial relief."); *Young v. Gen. Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988) (holding that conclusory allegations, without more, are insufficient to raise an inference of pretext).

In sum, Mr. Wright has not raised a genuine dispute of material fact on the issue of pretext. Accordingly, Defendant is entitled to summary judgment on Mr. Wright's Title VII/§ 1981 claims alleging a racially discriminatory termination.

**B.    Title VII/§ 1981 Retaliation Claims**

To establish a prima facie case of retaliation under Title VII and § 1981, Plaintiff must show "(1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events." *Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1325 (11th Cir. 2020) (Title VII) (citation and internal quotation marks omitted);

11

*Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012) (§ 1981)

(citation and internal quotation marks omitted).  Mr. Wright engaged in a statutorily

protected  activity when, in 2008, he filed an EEOC charge.  (*See* Pl.'s Dep. at 162,

191 (confirming that his retaliation claim is based solely on his protected activity of

filing an EEOC charge in 2008).)  It is undisputed that Mr. Wright's termination in

2017 is an adverse employment action.  Only the third element is at issue.

Mr. Wright cannot establish a causal relationship between the filing of his

EEOC charge in 2008 and his termination in 2017.  A nine-year time lag between

the protected activity and the adverse employment action clearly negates any

inference of a causal connection between the two events.[1]  *See Wascura v. City of*

*South Miami*, 257 F.3d 1238, 1244–45 (11th Cir. 2001) (holding that a three-and-

one-half-month period between the employee's protected activity and her

termination was, standing alone, insufficient to establish causation).

Mr. Wright argues, though, that there is other evidence from which to

establish a causal connection.  He contends that his direct supervisor, Mr. Gibson

"found out" that Mr. Wright had filed the EEOC charge in 2008 and embarked upon

a plan to fire Plaintiff.  (Pl.'s Dep., at 149–50 (testifying that Mr. Gibson "found out

---

[1] Whether close temporal proximity alone can ever demonstrate causation is an issue that need not be addressed on this record where temporal proximity is wholly lacking.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (holding that a plaintiff bringing a Title VII retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer").

that I had the EEOC against [Defendant]" and Mr. Gibson "didn't want me to have" the cutter operator job).) Mr. Wright's argument implies that there is temporal proximity between Mr. Gibson's knowledge of the EEOC charge and the commencement of the disciplinary measures Mr. Gibson levied against Mr. Wright. (Pl.'s Resp. to Def.'s Summ. J. Mot., at 11 (Doc. # 35).) Mr. Wright's deposition testimony is insufficient to raise a genuine dispute of material fact on the issue of causation.

First, Mr. Wright is correct to the extent that, "[i]n order to establish a causal connection, a plaintiff must show that the decision-maker was aware of the protected activity." *Ceus v. City of Tampa*, No. 18-10484, 2020 WL 525559, at *9 (11th Cir. Feb. 3, 2020) (citing *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)); *see also Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) ("At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)). However, Mr. Wright has not demonstrated that he has personal knowledge that Mr. Gibson knew that he had filed an EEOC charge in 2008. Personal knowledge matters. *See Vondriska v. Cugno*, 368 F. App'x 7, 9 (11th Cir. 2010) (providing that the deponent's testimony would be admissible on summary judgment "to the extent that [it] was competent, on personal knowledge, and set out facts

admissible at trial"); *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007) ("Even on summary judgment, a court is not obligated to take as true testimony not based upon personal knowledge." (citation omitted)); *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) (providing that depositions that support or oppose summary judgment must be based on personal knowledge). Mr. Wright's deposition testimony does not disclose that Mr. Wright has personal knowledge that Mr. Gibson "found out" about his 2008 EEOC charge. Mr. Wright's testimony on this point is short, entirely conclusory, and altogether silent on the matter of personal knowledge.

The court also has been unable to piece together any facts in the record suggesting that Mr. Gibson knew about Mr. Wright's decade-old EEOC filing. For starters, Mr. Gibson was not employed by Defendant in 2008 when Mr. Wright filed the EEOC charge. The record shows that Mr. Gibson worked for Defendant at least as early as 1999, that he resigned in 2007, and that he returned to work for Defendant in March 2016. (*See* Whitlow's Aff., at 2.) And Mr. Wright ultimately "dropped" the EEOC charge; therefore, no litigation ensued. (Pl.'s Dep., at 27–28, 193.) Because Mr. Wright's deposition testimony lays no foundation that he has personal knowledge that Mr. Gibson knew about his 2008 EEOC charge, the testimony is merely speculative. *See Riley v. Univ. of Ala. Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation

14

is not based on personal knowledge and is not competent summary judgment evidence." (citations omitted)).

Second, Mr. Wright's deposition testimony does not reveal when Mr. Gibson "found out" that Mr. Wright had filed an EEOC charge in 2008. Was it when Mr. Gibson returned to Defendant's employment in March 2016 or earlier? Mr. Wright leaves this important fact to guesswork. Third, three managerial employees made the decision to terminate Mr. Wright, not just Mr. Gibson, and Mr. Wright does not present evidence or argue that the other two decisionmakers were aware of his 2008 EEOC charge. (*See* Taylor's Decl. ¶ 27; Gibson's Decl. ¶ 18.) Accordingly, Mr. Wright has not established a genuine dispute of material fact that the filing of his EEOC charge in 2008 caused his termination in 2017. His prima facie case of retaliation fails.

Even if Mr. Wright had established a prima facie case, Defendant's legitimate, non-discriminatory reason for terminating Mr. Wright also is non-retaliatory. For the same reasons discussed in Part I.A.2., Mr. Wright has not raised a genuine dispute of material fact that Defendant's legitimate, non-retaliatory reason for terminating him is a pretext for retaliation. Accordingly, Defendant is entitled to summary judgment on Mr. Wright's Title VII/§ 1981 retaliation claims.

## II. CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's motion for summary judgment (Doc. # 22) is GRANTED.

Final judgment will be entered separately.

DONE this 27th day of March, 2020.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE
